## KANSAS, OKLAHOMA & GULF RY. CO. v. DONEGHY.

No. 35015. Oct. 28, 1952.

*249 P. 2d 719.*

C. B. Steele and A. N. Boatman, Okmulgee, and James D. Gibson, Muskogee, for plaintiff in error.

Carland Smith, Okmulgee, for defendant in error.

CORN, J. This is an action brought by James Doneghy, plaintiff, against the Kansas, Oklahoma & Gulf Railway Company, a corporation, defendant, to quiet title to the oil and gas mineral rights on a strip of land used by the defendant as a right of way in 40 acres of real property in Okmulgee county, Oklahoma.

The plaintiff was permitted to introduce the right of way deed which is as follows:

"Warranty Deed for Right of Way to the Missouri, Oklahoma & Gulf Railway Company.

"This Indenture, Made this 11 day of Sept. A.D. 1912, by and between James

P. Flanagan & Kathryn Flanagan of Tulsa County, State of Oklahoma, party of the first part, and the Missouri, Oklahoma & Gulf Railway Company, a corporation organized under the laws of the State of Oklahoma, party of the second part.

"Witnesseth: That the said party of the first part for and in consideration of the sum of Two Hundred Twenty-five and no-100 Dollars, in hand paid, the receipt of which is hereby acknowledged does hereby grant, bargain, sell, convey and confirm unto the said party of the second part, its successors and assigns forever, the following described real estate and premises, to-wit, a strip, belt or piece of land 100 feet in width, extending over and across the SE 1-4, SW 1-4 of Section 22 Township 12 N. Range 13 East, situate in Okmulgee County, State of Oklahoma, particularly described as follows, to-wit:

"Said right of way being a strip of land 100 ft. in width, that is, 50 ft. on each side of and immediately adjacent and parallel to the center line of the Coal Spur Extension of the Missouri, Oklahoma and Gulf Railway; said center line entering the SE, SW, Sec. 22, on its West line at a point about 63 ft. North of the SW corner thereof; running thence Northeasterly on a straight and curved line to the East line of said subdivision at a point about 580 ft. North of the SE corner thereof.

"All of the above described right of way containing 3.30 acres of land, more or less.

"To Have and to Hold the premises hereby conveyed together with all the improvements thereon and appurtenances and immunities thereunto belonging or in any wise appertaining forever and warrant and title to the same.

"The party of the first part as a part of the consideration hereof does hereby waive . . . all damages that may result in abuting or adjoining property owned or controlled by him caused or to be caused by the construction and operation of a railroad over the property herein conveyed.

"In Witness Whereof, the said party of the first part has hereunto set his hand and seal the day and year first above written.

"James P. Flanagan (SEAL)
"Kathryn Flanagan (SEAL)"

In addition to the deed plaintiff introduced the oral testimony of James P. Flanagan by deposition taken at Tulsa, Oklahoma. This witness testified he conveyed the property by said deed and that it was not his intention to convey any interest in the oil and gas mineral rights; that he drilled six oil wells on the land and that they were producing when the deed was executed; that the property sold in 1912 for $55,000 and that he bought back a half interest in this land in 1917 for $32,500. Plaintiff also introduced testimony of Juanita Kirk, treasurer of Okmulgee county, to show that for a number of years the taxes on the property had been paid by the record owners of the 40 acres and not the defendant railway company. Charles Wails, assessor of Okmulgee county, testified that there was no separate assessment of the right of way for taxes against the railway company. The plaintiff testified that he purchased the land by several conveyances and was the owner in fee of said 40 acres; that at no time had the oil company operator of the leases on said land paid any rentals to the defendant; that he executed a lease to one Lomax that excluded the right of way.

Two stipulations were entered into, one that the defendant company had never attempted to collect any rentals or enforce any oil rights, the other that the operators of the oil and gas interest never paid any rentals or funds due from the operation of the oil and gas properties to defendant.

Defendant's objections to the introduction of any evidence other than the deed and demurrer to the testimony were overruled. Judgment was entered for plaintiff declaring plaintiff to be the owner of all of the oil and gas mineral rights in and to the above-described property.

Defendant in this appeal presents two propositions: The first is that the defendant company by its deed acquired

a fee-simple title to the described real property and this included the oil and gas and minerals and the entire legal interest therein. The second proposition is stated as follows:

"As the deed is plain and unambiguous, its terms cannot be varied or explained by extrinsic parol evidence."

Defendant cites and relies upon Higgins v. Oklahoma City, 191 Okla. 16, 127 P. 2d 845; Jones v. Oklahoma City, 192 Okla. 470, 137 P. 2d 233; Kynerd v. Hulen, 5 F. 2d 160; Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207; Gilbert v. M., K. & T. Ry. Co., 185 F. 102, and several other cases. All of these cases have been examined. There is no condition subsequent involved in this case. Neither is this a case of failure of title or reversion. The question to be determined is what title was granted by the deed. We think an examination of some of these cases will be helpful. In Kynerd v. Hulen, supra, two separate deeds were executed to the railway company. This case is authority for the statement that where there is an ambiguity in the deed it may be construed in the light of extrinsic evidence. The author of this opinion thought it important to state that nowhere in the deed did it contain the provisions that the land was to be used as a right of way. In Marland v. Gillespie, supra, it is pointed out that there was no attempt to explain or vary the terms by parol or extrinsic evidence. In the body of the opinion, discussing the nature of the estate and the manner of proof, it is stated:

" ***Such a limitation upon an estate must be found in the express terms of the conveyance or from the proven intent of the parties."

In Gilbert v. M., K. & T. Ry. Co., supra, there was a plain warranty deed. The question decided was the power of the railway company to take. The case plainly indicates that the nature of the estate in an ambiguous deed may be established by parol or extrinsic evidence.

Defendant also cites Stinson v. Oklahoma Ry. Co., 190 Okla. 624, 126 P. 2d 260. Therein it is pointed out that conditions subsequent are not to be favored. As pointed out above such cases are not in point herein for the reason that the question to be determined is what estate was conveyed by the deed. In Rider v. Morgan, 31 Okla. 98, 119 P. 958, it is stated:

"It is a well-settled rule that where the meaning of the terms used in a written contract are not clear, the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the court."

See, also, in this connection, Rogers v. Kinney, 122 Okla. 73, 250 P. 890.

As stated by this court in Trumbla v. State ex rel. Commissioners of the Land Office, 191 Okla. 119, 126 P. 2d 1015, in construing a deed of doubtful meaning the first duty of the court is to ascertain the intention of the parties, particularly that of the grantor. This case was cited with approval in Hampton v. Kessler, 193 Okla. 619, 145 P. 2d 955, a case cited and relied upon by defendant. Therein it is also stated:

"After carefully weighing the evidence, the circumstances surrounding the making of the deed in question, the subsequent conduct of the parties, the rules of construction urged by the parties and the other rules of construction above stated, we are unable to say that the judgment of the trial court is clearly against the weight of the evidence."

We think a strong circumstance in the case at bar is the fact that from 1912, the date of conveyance, until the answer filed in the case under consideration on the 23rd day of February, 1950, a period of over 37 years, the defendant made no claim or assertion of a right to any of the oil or minerals produced from the land. This and the undisputed fact that the approximate four acres conveyed by the defendant was sold for a sum of $225, when the land had on it six producing wells and a half interest therein was

worth approximately $32,000, together with the testimony of the witnesses above referred to, justified the court in rendering judgment for plaintiff.

In O'Neal et ux. v. Upton et ux., 202 Okla. 403, 214 P. 2d 712, it is stated:

"In cases of equitable cognizance the appellate court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal unless it appears that such findings and judgment are clearly against the weight of the evidence."

Finding no error the judgment is affirmed.

HALLEY, V.C.J., and DAVISON, JOHNSON, and BINGAMAN, JJ., concur. ARNOLD, C.J., and WELCH, J., concur in result. GIBSON and O'NEAL, JJ., dissent.